**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCRIPPS HEALTH, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FOOD EMPLOYERS & BAKERY & CONFECTIONERY WORKERS BENEFIT FUND OF SOUTHERN CALIFORNIA, a California corporation; ANTHEM BLUE CROSS LIFE & HEALTH INSURANCE CO., a California corporation; and DOES 1 through 15,<br><br>Defendant. | CASE NO. 10-cv-2484-WQH-RBB<br><br>ORDER |

HAYES, Judge:

The matters before the Court are 1) the motion for summary judgment filed by Defendant Food Employers & Bakery & Confectionery Workers Benefit Fund of Southern California (ECF No. 28); and 2) the motion for summary judgment filed by Plaintiff Scripps Health (ECF No. 42).[1]

**BACKGROUND**

On October 29, 2010, Plaintiff Scripps Health (Scripps) filed an action against Defendants Food Employers & Bakery & Confectionery Workers Benefit Fund of Southern

[1] On December 13, 2011, the Court granted the joint motion to dismiss Blue Cross of California and Anthem Blue Cross Life & Health Insurance Co. without prejudice. (ECF No. 56).

California (FEBC) and Anthem Blue Cross Life & Health Insurance Co. (Blue Cross) in the Superior Court of the State of California County of San Diego alleging breach of written contract, breach of implied contract, estoppel and declaratory relief. (ECF No. 1 at 6). Plaintiff Scripps asserts that it is entitled to be paid immediately by Defendants for "life saving emergency care to one of its insureds." *Id*.

On December 2, 2010, Defendant FEBC removed the action to this federal court asserting jurisdiction under 28 U.S.C. § 1441 "based upon the fact that the gravamen of the Complaint is to seek benefits from a self-funded plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*., that necessarily involve questions arising under ERISA, including pre-emption issues and defenses under ERISA." *Id*. at 2-3.

On November 14, 2011, Defendant FEBC filed a motion for summary judgment. (ECF No. 28). Defendant FEBC asserts that it is entitled to summary judgment as a matter of law "[b]ased upon the undisputed contractual provisions between Scripps and [Blue Cross Defendants], the undisputed facts of the claim, and the provisions of the written plan of benefits of FEBC." (ECF No. 28-1 at 6). Defendant FEBC contends that all claims filed by the Plaintiff Scripps are claims for benefits under the terms of an employee benefit plan governed by ERISA. Defendant FEBC contends that Plaintiff's claims are subject to federal jurisdiction under ERISA, and that Plaintiff's complaint is completely preempted by ERISA. Defendant FEBC asserts that Plaintiff Scripps is not entitled to payment under the terms of the contract between Plaintiff Scripps and Blue Cross or under the ERISA benefit plan. Defendant FEBC asserts that Plaintiff Scripps failed to exhaust or initiate the administrative remedies under the benefit plan, and that the work-for-profit provision of the benefit plan excludes coverage under the present circumstances.

On November 14, 2011, Plaintiff Scripps filed a motion for summary judgment against Defendant FEBC. (ECF No. 42). Plaintiff Scripps asserts that it is entitled to judgment in the amount of $527,389.63. Plaintiff Scripps contends that it is entitled to recover under a written contract independent of any ERISA plan. Plaintiff Scripps asserts that Defendant FEBC breached its duty to Plaintiff Scripps as a "Other Payor" under a contract between Plaintiff

Scripps and Blue Cross. Plaintiff Scripps asserts that Defendant FEBC cannot rely upon the failure to exhaust administrative remedies due to its own failure to comply with ERISA regulations and that Defendant FEBC has forfeited its right to claim a work-for-profit exclusion under the benefit plan. Plaintiff Scripps contends that Defendant FEBC has no excuse to avoid its obligation to pay Scripps for services rendered to the Patient.

**FACTS**

Plaintiff Scripps is a non-profit, community-based health care delivery network located and doing business in San Diego, California. Plaintiff Scripps operates four acute-care hospitals licensed to provide general acute inpatient and outpatient services.

Defendant FEBC is an employee welfare benefit plan governed by ERISA. Defendant FEBC provides health care coverage to its members and their dependents. Defendant FEBC is self-funded in that the payment of any medical costs comes directly from the assets of the Defendant FEBC and not an insurer or other third party.

On or about September 1, 2005, Plaintiff Scripps entered into an agreement with Blue Cross of California entitled "BLUE CROSS OF CALIFORNIA Comprehensive Contracting Hospital Agreement for Scripps Health." ("BCC Contract") (ECF No. 39). Pursuant to the BCC Contract, Scripps agreed to "provide to Members those Hospital Services which are Medically Necessary when such services are ordered by a licensed physician or other licensed health professional with appropriate medical staff privileges at HOSPITAL and are in accordance with the applicable Benefit Agreement and this Agreement." (BBC Contract, 4.1).

Under the BCC Contract, Plaintiff Scripps agreed to provide health care services at discounted rates to "Other Payors." (BBC Contract, 2.25). Defendant FEBC contracted with Blue Cross Life to act as the third party administrator for the claim at issue in this case. Defendant FEBC is an "Other Payor" under the BCC Contract.

Section 3.4 of the BBC Contract states that Scripps "agrees that each arrangement by which [Scripps] performs services for Covered Persons that utilize the Managed care Network shall constitute an independent legal relationship between [Scripps] and Affiliate or Other

Payer."

Section 4.7 of the BBC Contract provides that Scripps agrees "to seek, accept and maintain evidence of assignment for the payment of Hospital Services provided to members by HOSPITAL, under the applicable Benefit Agreement." (ECF No. 39 at 4.7).

Section 4.10 of the BBC Contract states in part: "BLUE CROSS shall require that Other Payor compensate HOSPITAL in accordance with the terms of this Agreement. In the event any such Other Payor fails to make required payments, HOSPITAL may seek payment from the Covered Person (up to the rates specified herein) unless prohibited by applicable law." (ECF No. 39 at 4.10). The BBC Contract provides in part as follows:

> BLUE CROSS will guarantee eligibility of a Member whose membership data is maintained on a BLUE CROSS system, when HOSPITAL obtains eligibility in advance of rendering service by accessing the BLUE CROSS eligibility and benefits verification system in strict accordance with the procedures provided in writing by BLUE CROSS to HOSPITAL. HOSPITAL will receive a verification for tracking purposes. Guarantee of eligibility will apply only if services are initiated within twenty (20) days of the receipt of verification code from BLUE CROSS.
>
> A guarantee of eligibility is not a guarantee of payment. If HOSPITAL is notified that the Member is eligible, HOSPITAL is entitled to payments for services rendered, covered under, and subject to the exclusions and limitations of the relevant BENEFIT AGREEMENT.

(BBC Contract, 6.9).

Patient in this case is the husband of a Member of the Bakery, Confectionery and Tobacco Workers International Union.[2] Member is a participant in the FEBC and Patient is eligible for covered services under the FEBC Plan as a dependent.

Under the FEBC Plan covered services include services which are "medically necessary, including "Emergency room or urgent care facility, in connection with a[n] ... accidental bodily injury which, in the absence of immediate care, could be reasonably expected to be life threatening or permanently disabling or disfiguring." (ECF No. 28, Exhibit 1, Food Employers and Bakery and Confectionery Workers Benefit Fund of Southern California Summary of Plan Description for Active Participants, December 2004 at 4-5). The FEBC

[2]The name of the Patient and the Member are in the record under seal in order to comply with state and federal privacy laws. Identities are not in dispute.

benefit Plan contains the following provision: "GENERAL EXCLUSIONS FOR ALL COMPREHENSIVE HOSPITAL MEDICAL EXPENSES BENEFITS - No benefits will be provided for losses caused or contributed to by: . . . 9. Any injury or sickness which is sustained in the course of, or arises from, any occupation or employment for compensation, profit or gain." *Id.* at page 36.

The FEBC benefit plan contains the following provision:

> If the illness, injury, disease or other condition for which benefits are sought resulted from the negligence, fault or other legal responsibility of a third party, you or your Dependent must execute an assignment form upon request by this Benefit Fund to recover an amount equal to, but not greater than, those payments it may make to you or your Dependent or your assignees for medical, Hospital, surgical and other expenses in connection with the condition or injury for which the third party was legally responsible. The Benefit Fund may not recover by way of this assignment an amount greater than the gross proceeds awarded to you or your Dependent through judgment, settlement or otherwise as a result of legal action, insurance claim or any other claim made against a third party pr parties. Execution of such an assignment is a condition precedent to you or your Dependent's entitlement to benefits, and the Benefit Fund shall not be required to pay benefits until such assignment is deposited with it.

*Id.* at 61-62.

On September 24, 2008, the Patient presented to the emergency room at Plaintiff Scripps Hospital. Patient had been towing the car of a customer of his towing business when he was injured by a third party motorist who reversed her vehicle into the Patient after stepping on the accelerator instead of the brake. The Police Report from the accident concluded that the third party motorist was at fault.

On September 25, 2008, Plaintiff Scripps verified the Patient's eligibility with a representative of Blue Cross. Plaintiff Scripps provided health care services to the Patient from September 24, 2008 through October 30, 2008. Blue Cross certified the Patient's entire stay at Scripps from September 24, 2008 through October 30, 2008 was medically necessary. Over the course of Patient's treatment, Blue Cross provided written certifications in letters on various dates that the medical services provided were medically necessary. Each Certification included the following:

> THIS CERTIFICATION IS BASED ON THE INFORMATION PROVIDED, AND IS OF MEDICAL NECESSITY ONLY AND IS NOT A GUARANTEE THAT BENEFITS WILL BE PAID. Payments are based on the terms of your coverage. These terms typically include certain exclusions, limitations and other

> conditions. Payment of your benefits could be limited for a number of reasons (for example, if the information submitted with your claim differs from that given by telephone, if the service is excluded from coverage or if you are not eligible for coverage when the service is provided).

(ECF No. 28-2 at 19).

The total billed charges by Scripps, based upon customary and reasonable rates, was $627,844.80. The BCC Contract provided a discount to FEBC, as "Other Payor," to make payments for covered services at a specific percentage of billed charges.

Following the injury, Plaintiff Scripps received an Assignment of Benefits from the Patient which stated:

> The undersigned authorizes direct payment to the Facility of any insurance or reimbursement from third party payers otherwise payable to or on behalf of the patient for services obtained at the facility, including but not limited to payments made pursuant to automobile medical payments coverage and uninsured or under insured motorists coverage, at a rate not to exceed the Facility's current billed charges as contained in the Facility's Charge Description Master. The undersigned agrees that such payment made directly to the Facility by the third party payor discharges the third party payer of such obligations in the extent of payment, but the undersigned remains financially responsible for charges due, but not paid, under this assignment of benefits. It is the patient's responsibility to provide the Facility with insurance information, present confirmation of eligibility and to obtain authorization for services. The failure to do so may result in the services not being covered under the patient's plan and the Facility may bill the patient for such services.

(ECF No. 28-2 at 18-19).

Plaintiff Scripps billed Blue Cross for the services that Plaintiff Scripps provided to Patient.

On or about December 23, 2008, Blue Cross priced the medical services at $527,389.63.

Upon receiving the bill for Medical Services and the pricing from Blue Cross, the FEBC Plan Administrator commenced review of the claim.

The record contains letters from FEBC addressed to "SMH Chula Vista" dated December 30, 2008; January 5, 2009; and January 30, 2009 ("pend letters") in which Defendant FEBC notified Plaintiff Scripps that additional information has been requested from the insured and that there will be a "slight delay in processing this claim." (ECF No. 30, Aranjo Declaration Exhibit 1). The letters state in part: "PENDING SUBROGATION AND

OTHER INSURANCE INFORMATION FROM OUR MEMBER." *Id*.

In November 2008, and in January 2009, the Member provided Defendant FEBC with a response to the "pend letters." *Id*. at Exhibit 3.

The record contains letters from Defendant FEBC addressed to Scripps Mercy Hospital dated January 7, 2009; January 23, 2009; and January 26, 2009. These letters provided to Scripps note "Return Service Requested" and contain notices to the Member which asks for further information regarding the injury and other insurance. The Letters state in part: "A BENEFIT DETERMINATION WILL BE MADE WITHIN 15 CALENDAR DAYS OF RECEIPT OF THE INFORMATION. HOWEVER, IF THE INFORMATION IS NOT RECEIVED WITHIN 45 CALENDAR DAYS THE CHARGES WILL BE DENIED." *Id.* at Exhibit 2.

The record contains letters from Defendant FEBC to Scripps dated January 26, 2009, January 30, 2009 and March 16, 2009 indicating that Defendant FEBC sent another request for information to the member (and by copy to Scripps). These letters state: WE DID NOT RECEIVE THE INFORMATION REQUESTED WITHIN 45 DAYS, THEREFORE, WE ARE DENYING THE CLAIM AS WE NOTED IN OUR ORIGINAL REQUEST." *Id*. at Ex 3.

On February 23, 2009, Defendant FEBC sent the Member, via her attorney, a letter stating in part:

> In order for us to consider benefits on claims submitted for this accident, we must be provided with additional information before we can make any determination as to what benefits, *if any*, are available under the Plan.
> In order to complete our subrogation file, the following information is required:
> . Complete Subrogation Reimbursement Agreement (enclosed)
> . Third Party insurance information

(ECF No. 30 Declaration of Denelle Araujo, Exhibit 4).

On March 2, 2009, the attorney for the Patient sent a letter to Defendant FEBC stating in part:

> This case involves ... a motorist that drove in reverse and, instead of braking, struck the accelerator causing her vehicle to strike [Patient]. [Patient] was delivering a vehicle with his tow truck and was struck as he worked the towing device to unfasten said car. ... Our client is insured for liability purposes through .....

(ECF No. 40, Exhibit 14). The letter provided the name address and insurance information of

the motorist to Defendant FEBC and included a copy of the accident report.

The record contains a May 20, 2009 Explanation of Benefits, Defendant FEBC sent to the Member of the closing of the claim which included notification of the "CLAIM REVIEW PROCEDURE." The record contains a May 20, 2009 Explanation of Benefits, addressed to Plaintiff Scripps which notes "CLOSED FOR NON SUBMISSION OF SUBROGATION FORMS/TOTAL CHGS $627,844.80. THESE CHARGES ARE INELIGIBLE UNDER THE TERMS OF YOUR POLICY." The form addressed to Plaintiff Scripps does not contain any notification of claim review procedure. (ECF No. 30 at Exhibit 8).

The FEBC Plan provides in part as follows:

> **Notice of Decision**
> You will be provided with written notice of denial of a claim, whether denied in whole or in part. This notice will state:
> . the specific reason(s) for the determination;
> . reference to the specific Plan provision(s) on which the determination is based;
> . a description of any additional material or information necessary to perfect the claim and an explanation of why the material or information is necessary;
> . a description of the appeal procedures and applicable time limits;
> . A statement of your right to bring a civil action under ERISA, Section 502(s) following an adverse benefit determination on review...

(ECF No. 35, Exhibit 1 at 70).

Plaintiff Scripps did not file an administrative appeal of this claim at any time. Plaintiff Scripps has not been paid anything for the services provided to the Patient from September 24, 2008 through October 30, 2008.

After this action was filed, Defendant FEBC became aware of facts indicating that the Patient was not eligible for benefits under the plan of benefits because he had been injured during the course of his employment.

## APPLICABLE STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Celotex*, 477 U.S. at 322, 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in her favor. *See Anderson*, 477 U.S. at 256. To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256. "[T]he mere fact that the parties make cross-motions for summary judgment does not necessarily mean that there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other." *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975); *see also Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1038 n.6 (9th Cir. 2000) (same).

**DISCUSSION**

1. **Plaintiff's claims/ERISA Preemption**

Defendant FEBC contends that it has no contractual relationship with Plaintiff Scripps which forms the basis for a breach of contract claim. Defendant FEBC contends that all of Plaintiff's claims are essentially claims for benefits under the FEBC plan and that jurisdiction exists only under ERISA. Defendant asserts that the terms of the BBC Contract require Plaintiff Scripps to look for payment from Defendant FEBC under the benefit plan, subject to the exclusions and limitations of the benefit plan. Defendant contends that the non-contractual causes of action cannot be used to require payments not otherwise required under the written terms of the ERISA benefit plan.

Plaintiff Scripps asserts that it is entitled to recover payment for services provided to the Patient from Defendant FEBC independent of the FEBC benefit plan. Plaintiff Scripps asserts that Defendant FEBC is contractually obligated by the BBC Contract to make payment for the covered services. Plaintiff Scripps contends that a contract existed between Scripps and Blue Cross and that Defendant "FEBC accessed the contract to get the discounted rates from Scripps." (ECF No. 42-1 at 16). Plaintiff Scripps asserts that "Scripps provided medically necessary services to the Patient and complied with the terms of and conditions of the BCC contract." *Id.* Plaintiff Scripps asserts that the FEBC plan covers the medically necessary emergency services that Scripps provided to Patient and that Plaintiff Scripps is entitled to recover for those services from Defendant FEBC under the BBC Contract.

In order to prevail on a claim for breach of contract, Plaintiff must prove (1) a contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) resulting damages to plaintiff. *See Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971). A common law cause of action, such as breach of contract, which "relate[s] to" an employee benefit plan fall under ERISA's express preemption clause, § 514(a).[3] *See Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553 (1987) quoting 29 U.S.C. § 1144(a). "The phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has connection with or reference to such plan.'" *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380 (1985) quoting *Shaw v. Delta Airlines, Inc.* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900 (1983). "The Ninth Circuit has held that ERISA preempts common law theories of breach of contract implied in fact, promissory estoppel, estoppel by conduct, fraud and deceit, and breach of contract. Those state laws authorizing causes of action for improper handling of claims under benefit plans have been held to be directly connected with the employee benefit plan and thus preempted by ERISA." *Ellenburg v. Brockway, Inc.*, 763 F.2d

---

[3]"Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..." §514(a) as set forth in 29 U.S.C. §1144(a).

1091, 1095 (9th Cir. 1985) (citation omitted).

In this case, Plaintiff Scripps entered into a contractual relationship with Blue Cross of California to "provide to Members those Hospital services which are Medically Necessary when such services are ordered by a licensed physician or other licensed health professional with appropriate medical staff privileges at HOSPITAL and are in accordance with the applicable Benefit Agreement and this Agreement." (BBC Contract, para 4.1). Under the BCC Contract, Plaintiff Scripps agreed to provide health care services at discounted rates to "Other Payors." (BBC Contract, para 2.25). Defendant FEBC is an "Other Payor" under the BCC Contract receiving the discounted rates. Defendant FEBC is not a party to the BCC Contract. The BCC Contract establishes the existence of a contractual relationship between Plaintiff Scripps and Blue Cross of California. The BCC Contract requires the Plaintiff Scripps to look directly to the benefit plan governed by ERISA in order to determine whether Defendant FEBC is liable for the payment for services to the plan participant.

Plaintiff Scripps correctly asserts that Section 514(a) does not preempt a provider's independent claims. However, Plaintiff Scripps has not identified the source of an independent basis to support the breach of contract claim. Compare *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.*, 187 F.3d 1045, (9th Cir. 1999) (dispute over the amount of payment under an agreement between Blue Cross and third medical provider not subject to ERISA preemption); *The Meadows v. Employers Health Insurance*, 47 F.3d 1006) (9th Cir. 1995) (alleged misrepresentation made by insurer to third party health care provider that patient was covered can form the basis for an independent state law claim not related to ERISA plan). No provision of the BCC Contract obligates Defendant FEBC to reimburse Plaintiff Scripps for services which are not provided under the benefit plan. Section 3.4 of the BBC contract provides that the "arrangements by which" Scripps "performs services for" Patient "shall constitute an independent legal relationship between [Scripps] and Affiliate or Other Payer." Section 4.7 of the BBC contract provides that Plaintiff Scripps agrees "to seek, accept and maintain evidence of assignment for the payment of Hospital Services provided to

members by HOSPITAL, under the applicable Benefit Agreement." (BBC Contract, 4.7).

The BBC Contract states in part: "BLUE CROSS shall require that Other Payor compensate HOSPITAL in accordance with the terms of this Agreement." (BBC Contract, 4.10). The BBC Contract specifically provides: "If HOSPITAL is notified that the Member is eligible, HOSPITAL is entitled to payments for services rendered, covered under, and subject to the exclusions and limitations of the relevant BENEFIT AGREEMENT." (BBC Contract, 6.9). In this case, the applicable benefit agreement which "constitute[s] an independent legal relationship" between Plaintiff Scripps and Defendant FEBC, is an employee benefit plan. *Id*. at 3.4. The Court concludes that the common law cause of action for breach of contract "relate[s] to" an employee benefit plan and falls under ERISA's express preemption clause, § 514(a). Any right that Plaintiff Scripps has to recover from Defendant FEBC for medically necessary services provided to plan participants, relates to the benefit plan and remains subject to the exclusions and limitations of the employee benefit plan.

In the alternative, Plaintiff Scripps asserts that it is entitled to reimbursement under an implied contract and/or equitable state law causes of action for estoppel and declaratory relief. Plaintiff Scripps asserts that Defendant FEBC accepted the benefit of discounts under the terms of the BBC Contract and that Defendant FEBC must be held liable for breach of the BCC Contract. In this case, the BCC Contract requires that Plaintiff Scripps look to the terms of the benefit plan to determine coverage. The BCC Contract states in part: "If HOSPITAL is notified that the Member is eligible, HOSPITAL is entitled to payments for services rendered, covered under, and subject to the exclusions and limitations of the relevant BENEFIT AGREEMENT." There are no facts in this case which support a claim for an implied contract, estoppel or declaratory relief. The Court concludes that Plaintiff's non-contractual claims in equity are barred under ERISA. *See Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1444 (9th Cir. 1995) ("ERISA generally preempts common law theories of contract law."). Plaintiff's motion for summary judgment on the grounds that it is entitled to judgment as a matter of law on the claims of breach of contract, implied contract, estoppel or declaratory judgment is denied.

2. **Payment under the Benefit Plan**

Defendant FEBC contends that Plaintiff Scripps is not entitled to payment under the benefit plan on the grounds that Plaintiff Scripps failed to exhaust the administrative remedies under the benefit plan. Defendant FEBC contends 1) that it properly denied the claim for lack of a signed subrogation agreement and 2) that coverage is excluded under the work-for-profit exclusion in the plan.

Plaintiff Scripps asserts that Defendant FEBC cannot rely upon the failure to exhaust administrative remedies because Defendant FEBC did not comply with the requisite ERISA timelines and notice requirements. Plaintiff Scripps further contends that Defendant FEBC has forfeited its right to assert the work-for profit exclusion under plan because the exclusion was not raised until after Plaintiff Scripps filed this action. In addition, Plaintiff Scripps contends that the work-for-profit exclusion does not apply to the emergency services provided in this case to Patient.

Plaintiff Scripps is entitled to seek reimbursement as an assignee of the Patient under the terms of the plan. 29 U.S.C. § 1133 provides that "every employee benefit plan shall — (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan had been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and 2) afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.

The FEBC benefit plan provides a claims review procedure which states in part: "Within 180 days after you receive written notice of your claim determination, you or your representative may appeal a denial or any decision that does not cover expenses you believe should be covered." Defendant FEBC asserts that it "sent a denial letter on May 20, 2009 stating that 'THESE CHARGES ARE INELIGIBLE UNDER THE TERMS OF YOUR POLICY....FOR NON SUBMISSION OF SUBROGATION FORMS.' ... This was in compliance with 29 C.F.R. § 2560.503-1(g). The letter also contained a description of the plan

review procedure of the Benefit Plan, in compliance with 29 C.F.R. § 2560.503-1(g)(iv). Araujo Declaration para 14, Exhibit 8." (ECF No. 45 at 15).

A review of the documents in Exhibit 8 shows that the May 20, 2009 letter to the participant contained a description of the plan review procedure and that the May 20, 2009 letter to Plaintiff Scripps dated did not contain a description of the plan review procedure of the benefit plan. The Court concludes that Defendant FEBC has failed to establish that it provided notice to Plaintiff Scripps of the claims review procedure adequate to afford a full and fair review as required under 29 U.S.C. § 1133(2). Defendant FEBC is not entitled to summary judgment in its favor on the grounds that Plaintiff Scripps failed to initiate the claims review procedure provided for in the benefit plan.

Plaintiff Scripps moves the Court for judgment in its favor on the grounds that the administrative review process is deemed exhausted or futile based upon the procedural defect. Plaintiff Scripps moves the Court to determine the merits of its claim and work-for-profit exclusion in the benefits plan in favor of Plaintiff Scripps and to order payment as a matter of law. Defendant FEBC asserts that the proper remedy in this case for a procedural deficiency is remand to the trustees for a full and fair administrative review.

Courts apply the "general rule governing ERISA claims that a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Diaz v. United Agr. Employee Welfare Benefit Plan and Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995); *see also*, *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980) ("[F]ederal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and [] as a matter of sound policy they should usually do so."). The exhaustion requirement serves to "enable an employer, or its plan, to obtain full information about a claim for benefits, to compile an adequate record, and to make a reasoned decision." *Brown v. J.B. Hunt Transport Servs., Inc.*, 586 F.3d 1079, 1085 (8th Cir. 2009). Courts do not distinguish between plan beneficiaries and their assignees when applying the exhaustion requirement. *Misic v. Bldg. Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1378 (9th Cir. 1986) ("assignors,

beneficiaries under the Act, are expressly authorized by section 1132(a)(1)(B) to sue to recover benefits under a plan.").

Procedural defects in the handling of a claim do not necessarily require substantive remedies bypassing the administrative review process. *See Blau v. Del Monte Corp.* 748 F.2d 1348, 1353 (9th Cir. 1985). In *Blau,* the Court of Appeals recognized

> While it is thus clear that violations of ERISA's procedural requirements - reporting, disclosure and claims procedures - may amount to arbitrary and capricious conduct, the remedy to which this entitled the victimized employees has often been less than satisfactory. Ordinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy.

*Id*. at 1353. The Court of Appeals concluded that a substantive remedy would be appropriate only when the procedural defects caused a substantive violation or themselves worked a substantive harm. *See Id*. at 1354. The Court does not bypass a full and fair administrative review of the merits of a claim because of a procedural defect without a substantive harm because ERISA does not incorporate the principles of waiver and estoppel. *See e.g., Gaglianio v. Reliance Standard Life Insurance Company,* 547 F.3d 230, 239 (4th Cir. 2008) ("ERISA requires the Plan be administered as written and to do otherwise violates not only the terms of the Plan but causes that Plan to be in violation of ERISA.").

The Court concludes that there are no facts to support substantive harm to Plaintiff Scripps from the procedural defect and that remand is the appropriate remedy in order to allow a full and fair review by the plan administrator of any claim for reimbursement under the benefit plan. *See e.g., Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996) (remand appropriate where the plan administrator has misconstrued the Plan and applied a wrong standard to a benefits determination.); *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1035 (9th Cir. 2006) ("usual remedy for a violation of § 1133 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review.").[4] The determination of a claim must be made based upon

[4]The scope of the issues on remand is subject to the general rules of the administrative review process.

the benefit plan as determined in the administrative review process. "It should be up to the administrator, not the courts, to make [the benefits determination] in the first place." *Saffle*, 85 F.3d at 461.

Defendant's motion for summary judgment on the grounds that Plaintiff Scripps failed to exhaust administrative remedies is denied. Plaintiff's motion for summary judgment on a claim for reimbursement under the benefit plan is denied.

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment (ECF No. 42) is denied. Defendant's motion for summary judgment (ECF No. 28) is denied. This action is remanded for administrative proceedings consistent with this order. The Clerk of the Court shall administratively close this case with leave to reopen upon the motion of any party for good cause.

DATED: April 24, 2012

**WILLIAM Q. HAYES**
United States District Judge